# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | | |
|---|---|---|
| **RODNEY F. MAVITY**, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:09CV00027 |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| **MTD PRODUCTS, INC.**, | ) | By: James P. Jones |
| | ) | Chief United States District Judge |
| Defendant. | ) | |

*Charles H. Smith, III, and William Wirt Brock, IV, Gentry Locke Rakes & Moore, LLP, Roanoke, Virginia, for Plaintiff; Christopher A. Corpus, Wegman, Hessler & Vanderburg, Cleveland, Ohio, and James W. Jennings, Jr., Woods Rogers PLC, Roanoke, Virginia, for Defendant.*

In this products liability personal injury case, I will deny the defendant's Motion for Summary Judgment and resolve certain pretrial issues.

I

The plaintiff, Rodney F. Mavity, was seriously injured when the Cub Cadet RZT 50 riding lawn mower that he was operating overturned and landed upside-down on top of him. The mower was manufactured by the defendant MTD Products, Inc. ("MTD") and Mavity seeks an award of damages for his injuries based on alleged negligent design of the mower, a failed duty to warn of the mower's dangerous conditions, and breach of the implied warranties of merchantability and fitness. The

case is founded on the court's diversity jurisdiction. 28 U.S.C.A. § 1332(a) (West 2006).

The defendant MTD has moved for summary judgment in its favor on the grounds that (1) there is insufficient evidence that the mower was defective; (2) Mavity substantially modified the mower after the sale and unforeseeably misused it; (3) any hazard or risk in the use of the mower was open and obvious; (4) there was no failure to warn that made the mower unreasonably dangerous; (5) any implied warranty was limited in duration and has expired; and (6) Virginia law precludes a claim based on "crashworthiness."

The parties have also filed motions in limine as to certain evidentiary issues. All of the motions have been briefed and argued and are ripe for decision. I will consider them seriatim.

II

Summary judgment is appropriate when there is "no genuine issue of material fact," given the parties' burdens of proof at trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986); *see* Fed. R. Civ. P. 56(c). In determining whether the moving party has shown that there is no genuine issue of material fact, a court must assess the factual evidence and all inferences to be drawn therefrom in the light most

favorable to the non-moving party. *See Ross v. Commc'ns Satellite Corp.,* 759 F.2d 355, 364 (4th Cir. 1985), *overruled on other grounds*, *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989).

Because the relevant events in this case occurred in Virginia, the substantive law of Virginia applies. In order to recover in a Virginia products liability case, a plaintiff must prove that the product in question contained a defect that rendered it unreasonably dangerous for ordinary or foreseeable use. *Alevromagiros v. Hechinger Co.*, 993 F.2d 417, 420 (4th Cir. 1993). In making that determination, the "court will consider safety standards promulgated by the government or the relevant industry, as well as the reasonable expectations of consumers." *Id.* When the defect complained of is one of design, liability "is imposed only when an unreasonable danger is created [and] [w]hether or not this has occurred should be determined by general negligence principles, which involve a balancing of the likelihood of harm, and the gravity of harm if it happens against the burden of the precautions which would be effective to avoid the harm." *Dreisonstok v. Volkswagenwerk, A.G.*, 489 F.2d 1066, 1071 (4th Cir. 1974) (internal quotation marks and citation omitted).

A manufacturer breaches its duty to warn if it has reason to know that a product is dangerous for the use for which it is supplied, has no reason to believe the user will realize the dangerous condition, and fails to exercise reasonable care to inform users

of the dangerous condition. *Jones v. Ford Motor Co.*, 559 S.E.2d 592, 600 (Va. 2002).[1]

The accident in this case happened on October 26, 2007, when plaintiff Mavity, a 59-year-old, college-educated retiree, was mowing his lawn with the riding mower he had purchased new approximately two years earlier. Mavity's lawn slopes down to a public road, with a low drainage depression boarding the road. He had mowed down the slope to the road, traveled parallel to the road, backed up across the drainage depression and had started up the slope when the front of the mower suddenly came up. The mower then tipped over backwards, pinning Mavity beneath it. Mavity had mowed the lawn in the same way many times before and does not himself know why the accident happened. The operator's manual for the mower, which Mavity had obtained prior to the accident, warned operators not to operate on a slope greater than 15 degrees. The record is unclear as to the degree of the slope where the accident happened, although there is evidence that it was at or less than 15 degrees.[1]

The plaintiff has obtained the opinions of two experts as to liability, whose technical qualifications the defendant does not question. The first expert, E. Smith

---

[1] The operator's manual cautioned users to mow across slopes and not up and down, but a safety decal on the machine entitled "DANGER" stated, "Mow Up and Down. Not Across." (Mavity Dep. Ex. 2 at 4, Ex. 3, Oct. 2, 2009.)

Reed, is a licensed professional engineer and former design engineer for another mower manufacturer. He opines that the mower in question was capable of unexpectedly overturning when operated on slopes within the range permitted by the operator's manual, when the operator weighed as much as Mavity — 265 pounds. Reed contends that because of these characteristics, the mower should have been designed with control lever dampers, preventing a rapid acceleration of the mower leading to the raising of the front wheels and upending of the mower. According to Reed, such control lever dampers are commonly included for safety reasons in the design of similar mowers by other manufacturers.

In addition, Reed opines that the manufacturer should have warned users not to mow on slopes of less than 15 degrees, and of the effect of the weight of the operator on the safety of operation on slopes.

Based on these opinions and the other facts of record, I find that whether the product had a defective design that contributed to cause Mavity's injuries and whether MTD failed to warn of this dangerous condition are jury issues. The experts' opinions here are sufficient to show an unreasonably dangerous condition in the mower leading to the accident and the plaintiff's injuries. *See Freeman v. Case Corp.*, 118 F.3d 1011, 1015-17 (4th Cir. 1997) (upholding jury verdict for plaintiff in lawn mower accident case based on expert's testimony after his review of

published material, including industry literature, his inspection and test of the product and his extensive experience in the field).

The defendant contends that Mavity misused the product by modifying it after he purchased it. Mavity did install a switch that allowed the machine to mow in reverse, as well as replacing the seat with one that he found more comfortable. In addition, he changed the discharge deflector by securing it in the up position. However, the plaintiff's expert Reed has opined that none of these changes had any effect on the cause of the accident. Accordingly, at best, any misuse of the product is a jury question.

Solely as to the claim of breach of warranty,[2] the defendant contends that it is barred by a limitation in the warranty provided by MTD. The written Manufacturer's Limited Warranty provided, in relevant part, that

> "Cub Cadet" warrants this product against defects in material and workmanship for a period of two (2) years commencing on the date of original purchase and will, at its option, repair or replace, free of charge, any part found to be defective in materials or workmanship.
>
> . . . .
>
> No implied warranty, including any implied warranty of merchantability of [sic] fitness for a particular purpose, applies after the

---

[2] "The standard of safety of goods imposed on the seller or manufacturer of a product is essentially the same whether the theory of liability is labeled warranty or negligence." *Logan v. Montgomery Ward & Co.*, 219 S.E. 2d 685, 687 (Va. 1975).

applicable period of express written warranty above as to the parts identified.

(Br. Supp. Def.'s Mot. Summ. J., Ex. G.) MTD argues that "this two-year durational period expired before Plaintiff filed the Complaint." (Br. Supp. Def.'s Mot. Summ. J. 28.)

Even assuming that the limitation described above is enforceable, it is clearly not a reduction of the statute of limitations applicable to the plaintiff's cause of action for personal injury, which under Virginia law is two years from the date of the accident, regardless of the theory of recovery. Va. Code Ann. § 8.01-243(A) (Supp. 2009); *see Tyler v. R.R. Street & Co.*, 322 F. Supp. 541, 543 (E.D. Va. 1971).

The plaintiff's expert Reed and its other expert, Thomas A. Berry, also a professional engineer, both have opined that the mower in question was defective because it did not have a so-called rollover protective system ("ROPS"), such as a roll bar. According to Berry, such protective devices have been provided on similar lawn mowers for many years and can be added at a minimal cost to the manufacturer. MTD argues that Virginia law does not permit recovery in a products liability suit for lack of "crashworthiness."[3]

---

[3] The defendant does not expressly identify the plaintiff's allegation that it contends constitutes an impermissible "crashworthy" cause of action, but I assume it relates to the absence of a ROPS on the mower. The plaintiff has not responded to this argument.

"A crashworthy vehicle is defined as one which, in the event of a collision, resulting accidentally or negligently from the act of another and not from any defect or malfunction in the vehicle itself, protects against unreasonable risk of injury to the occupants." *Slone v. Gen. Motors Corp.*, 457 S.E.2d 51, 54 n. (Va. 1995) (internal quotation marks omitted). While a cause of action based on this doctrine has been recognized in almost all U.S. jurisdictions, it has been expressly rejected by the Virginia Supreme Court. *Id.* at 54; *see Shifflett v. Gen. Electric Co.*, No. 5:06CV00127, 2007 WL 3243796, at *3 (W.D. Va. Nov. 1, 2007).

While I must, of course, accept Virginia law as announced by the Virginia Supreme Court, its definition of a crashworthy cause of action does not encompass the present case, where the plaintiff claims that the accident itself was caused by a design defect in the mower. If, as claimed by the plaintiff, the machine was unreasonably dangerous for operation on slopes to begin with, the failure to protect the operator from such dangerousness falls within the traditional principles governing product liability, as reiterated by the Virginia Supreme Court in *Slone*.[4]

---

[4] In *Slone*, the operator of a dump truck sued the manufacturer after the dump truck flipped over while dumping its load, claiming that the rollover of the truck was foreseeable and that the roof was inadequately designed to protect occupants of the truck cab in the event of such a rollover. 457 S.E. 2d at 52-53. While the court rejected the doctrine of crashworthiness, it held that summary judgment was improper as to the manufacturer based on the allegation that the possibility of a rollover was reasonably foreseeable to it. *Id.* at 54-55.

It is also contended on behalf of the defendant that because Mavity has testified that he knew that other similar mowers were available with ROPS and chose the MTD mower even though it did not have such a feature, he was aware of the defect and is barred from recovery. But, "[t]he relevant question under Virginia law is not whether the defect itself . . . was obvious, but whether the hazard . . . was open and obvious." *Freeman*, 118 F.3d at 1014-15. Viewing the evidence in the light most favorable to the plaintiff, however, it is clear that the defendant was not aware of characteristics of the mower, which — at least according to expert Reed — increased the chances of overturning while accelerating up a slope.

For all of these reasons, I will deny the defendant's Motion for Summary Judgment.

III

The parties have filed four motions in limine relating to the exclusion of evidence. Mavity moves to exclude evidence of negligence by physicians who treated him immediately after the accident. MTD seeks to exclude: (1) evidence of wages lost by Mavity's wife when she stopped working to care for Mavity; (2) irrelevant, inadmissible, or unfairly prejudicial exhibits produced by Berry, one of the plaintiff's engineering experts; and (3) trial exhibits about Mavity's future medical

costs produced by Sharon L. Reavis, an expert who authored Mavity's life care plan. At oral argument, Mavity conceded that evidence regarding his wife's earning should be excluded.

For the reasons discussed within, I will grant Mavity's motion in limine. I will grant MTD's motion relating to Reavis and deny the motion relating to Berry.

A

Mavity seeks to exclude any argument, evidence, or testimony that negligence by third parties other than MTD was the proximate cause of his injuries.

After the lawnmower crushed Mavity, paramedics took him to a local hospital. Doctors there x-rayed Mavity's back and concluded that he had only suffered a compression fracture of the T-10 vertebrae. A few hours later, he was released. Mavity went home and sat in a recliner for two days until his wife rushed him back to the hospital because he could not eat, drink, urinate, move his bowels, feel his legs, or walk.

Upon his return to the hospital, doctors diagnosed Mavity with a burst fracture of T-9 with bone fragments compressing the spinal cord, which caused swelling. Later, doctors concluded there were minimal compression fractures to Mavity's T-8 and T-10 vertebrae. Among a host of other problems, Mavity suffered temporary paralysis of his legs, weakness of his extremities, and neurogenic bowel and bladder.

The neurological deficits persisted for months after the initial injury. Presently, Mavity still suffers from limited mobility and neurological deficits in his legs.

In September 2009, Mavity sued the hospital and the physicians who treated him on the day of the accident. The lawsuit is pending in state court.

In preparation for this litigation, MTD hired a neurologist and a physician specializing in emergency medicine to evaluate Mavity's medical treatment. Otis Mark Hastings, M.D., an emergency medicine doctor, concluded that the care Mavity received on October 26, 2007, "breached the standards of accepted emergency care." (Pl.'s Mot. in Limine Ex. A, 4.) Dr. Hastings did not offer an opinion as to whether this care aggravated Mavity's existing injuries or resulted in new, separate injuries.

E.A. Chiocca, M.D., a neurologist, also reviewed Mavity's medical records and determined that upon admission to the ER, doctors should have performed a CT scan of Mavity's spine, which would have revealed the other injuries he suffered. "To a reasonable degree of certainty," Dr. Chiocca wrote, "this would have prompted a prompt effort to immobile his spine surgically with a good outcome for this patient who... presented no impairment of neurological function." (Pl.'s Mot. in Limine Ex. B, 2.) Dr. Chiocca concluded that the neurological deficiencies suffered by Mavity "would not be present if [Mavity] had prompt evaluation and recognition of the severity of his thoracic fracture" on October 26, 2007. (*Id*. at 3.)

Mavity argues that the defense experts concluded that if he had initially received proper treatment, his injuries would have been simply less severe. Therefore, Mavity asserts, the treatment received at the hospital was not a superseding cause and thus is irrelevant and should be excluded from evidence.

MTD counters that the experts' opinions indicate that Mavity's paralysis and neurological deficits were distinct from the "back pain" he suffered after the lawnmower crushed him. (Def.'s Resp. 14.) During oral argument, MTD asserted that after his initial hospital visit, Mavity "basically walked out of the hospital" with a compression fracture. Two days later, when Mavity returned to the ER unable to walk, MTD stated that Mavity suffered "different" injuries than the physical traumas initially inflicted upon him. Thus, MTD believes it cannot be held liable for these injuries. And, MTD concludes that because of this, the question of the physicians' negligence should be reserved for the jury.

In Virginia, if an injured individual uses "'ordinary care in selecting a physician for treatment of his injury, the law regards the aggravation of the injury resulting from the negligent act of the physician as a part of the immediate and direct damages which naturally flow from the original injury.'" *Smith v. Kim*, 675 S.E.2d 193, 196 (Va. 2009) (quoting *Corbett v. Clarke*, 46 S.E.2d 327, 328 (Va. 1948)). Courts reason that this negligence is "'a result that might reasonably have been

anticipated' by the original tortfeasor." *Id.* (quoting *Corbett*, 46 S.E.2d at 328.) To relieve a defendant of liability from his negligence, "'the negligence intervening between the defendant's negligent act and the injury must so entirely supersede the operation of the defendant's negligence that it alone, without any contributing negligence by the defendant in the slightest degree, causes the injury.'" *Atkinson v. Scheer*, 508 S.E.2d 68, 71-72 (Va. 1998) (quoting *Panousos v. Allen,* 425 S.E.2d 496, 499 (Va. 1993)). Generally, the question of whether a physician's negligence caused a separate and distinct injury is reserved for the jury. *Washington v. Williams*, 210 S.E.2d 154, 158 (Va. 1974). But, if "reasonable minds would not differ upon the meaning of facts necessary to reach a legal conclusion," the court may make a determination as to the issue. *Id.*

The present record unquestionably demonstrates that the physicians' negligence aggravated Mavity's injuries and constituted an incident that could be reasonably anticipated. Subsequent negligent acts will only interrupt the causal chain of events if they "entirely supersede" the defendant's negligence so that the second act alone, "without any contributing negligence by the defendant in the slightest degree," causes the injury. *Atkinson*, 508 S.E.2d at 71-72. That is not the case here.

The conduct of the physicians who treated Mavity hours after his lawnmower accident constituted treatment that could be reasonably foreseen by the mower's

manufacturer. The neurological injuries suffered by Mavity stem directly from his compressed and burst vertebra, which were a result of the heavy lawnmower landing on his chest. The opinion of one of the defendant's experts supports this conclusion. Dr. Chiocca opined that "to a reasonable degree of medical certainty," if emergency room doctors had initially ordered a CT scan of Mavity, they could have seen his T-8 and T-10 injuries and "this would have prompted a prompt effort to immobilize his spine surgically with a good outcome. . . ." (Pl.'s Mot. in Limine Ex. B, 2.) In addition, Dr. Chiocca concluded that Mavity's neurological problems, which persisted for months after the accident, "would not be present if [Mavity] had prompt evaluation and recognition of the severity of his thoracic fracture. . . ." (*Id.* at 3.) Thus, Dr. Chiocca's opinion supports the conclusion that the physicians' negligence aggravated Mavity's existing injuries.

The conclusions offered by MTD's experts demonstrate that the initial medical treatment of Mavity was a reasonably foreseeable result of the initial accident. Any third-party negligence is thus irrelevant to Mavity's claim against MTD and must be excluded from the jury.

B

MTD also seeks to exclude the future cost projections included in the preliminary life care plan ("PLCP") created by Reavis, one of Mavity's experts. The

defendant does not contest Reavis' qualifications, her opinions as to the support needed by Mavity, or the initial costs of such support.

Sharon L. Reavis is a registered nurse who has a master's degree in rehabilitation counseling and is a certified rehabilitation counselor and medication case manager. Reavis reviewed Mavity's medical records and prepared the PLCP that outlines the ongoing, and future, medical care and support services required by Mavity's injuries. At the end of the PLCP, Reavis included a chart detailing each service or product needed by Mavity, the purpose of such service, the supplier, the frequency of purchase, the unit cost, and the total of these costs projected over the next 20 years.[5]

MTD argues that under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and Rule 702 of the Federal Rules of Evidence, the court should exclude Reavis' future cost estimates. In essence, MTD argues that the sum of future medical costs must be calculated at present value and that Reavis does not have the evident qualifications to determine such present value.

The plaintiff concedes that Reavis' projections are not calculated at present value, but contends that Virginia law does not demand such proof.

---

[5] Reavis projects the total cost over 20 years to be either $232,231.54 or $403,457.14, depending upon whether Mavity's wife is present to assist him.

In a federal statutory cause of action, "'when future payments or other pecuniary benefits are to be anticipated, the verdict should be made up on the basis of their present value only.'" *CSX Transp., Inc. v. Casale*, 441 S.E.2d 212, 214-15 (Va. 1994) (quoting *Chesapeake & Ohio Ry. v. Kelly*, 241 U.S. 485, 491 (1916)). Other states have adopted such a rule, *see. e.g., Lawson v. United States*, 454 F. Supp. 2d 373, 423 (D. Md. 2006) (applying Maryland law), but the Supreme Court of Virginia has not spoken on this issue, although it has approved awards of future medical expenses in a number of cases, where such expenses have been shown to be reasonably probable. *See, e.g., State Farm Mut. Auto. Ins. Co. v. Kendrick*, 491 S.E. 2d 286, 287 (Va. 1997).

In a diversity case, a federal court must apply the law of the highest court of the state in which it sits. *See Comm'r v. Estate of Bosch*, 387 U.S. 456, 465 (1967). Where a state's law is unclear, the court must predict how the highest court of that state would rule if presented with the issue. *See Brendle v. Gen. Tire & Rubber Co.*, 505 F.2d 243, 245 (4th Cir. 1974). To do so, I may consider "canons of construction, restatements of the law, treatises, recent pronouncements of general rules or policies by the state's highest court, well considered dicta, and the state's trial court decisions." *Wells v. Liddy*, 186 F.3d 505, 528 (4th Cir. 1999). The general trend

among other states is also relevant. *See St. Paul Fire & Marine Ins. Co. v. Am. Int'l Specialty Lines Ins. Co.*, 365 F.3d 263, 272 (4th Cir. 2004).

The applicable restatement of the law does provide that the measure of damages for "future pecuniary losses arising from a tort is the present worth of the full amount of the loss of what would have been received at the later time." Restatement (Second) of Torts § 913A (1979). The majority view is that awards for future medical expenses, like those for lost future earnings, should be calculated at present value. *See* 2 Stuart M. Speiser et al., *The American Law of Torts* § 8.13, at p. 569 (2003).

Based on these authorities, I conclude that Virginia law does require an award for future medical expenses in this case to be based on present value. In the absence of a proper qualification of Reavis, I will not allow her to testify or present evidence as to the total expected future expenses to be incurred by the plaintiff as a result of the accident.[6]

---

[6] Present value for future economic loss is often ignored in practice in litigation, particularly where the amount is relatively small or the time horizon is short. But here, where the amount claimed is large and the time frame is long, present value seems particularly appropriate in order to be fair.

C

MTD has also moved to exclude hundreds of documents, which the engineering expert Berry stated he will rely upon in support of his expert conclusions about the design of the mower. MTD argues that a majority of these exhibits are irrelevant and misleading and should be excluded under Rules 401 and 403 of the Federal Rules of Evidence.[7]

Berry reviewed the accident and the mower's design, and evaluated whether he thought the machine was defectively designed or unsafe. At the end of his report, Berry lists about 500 documents that served as sources for conclusions. The documents cover an expansive time period and a broad scope of topics. Among other things, Berry has reviewed various manuals for the mower, internal memos and letters from MTD, litigation materials from other cases involving MTD, studies and recommendations from national engineering organizations, articles on tractor and farming equipment accidents, and numerous accident reports and articles related to riding lawn mower accidents. The documents' publication dates range from 1914 to the present.

---

[7] Rule 401 states that relevant evidence has the tendency "to make the existence of any fact that is of consequence" to an issue "more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. Under Rule 403, a court may exclude relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or" if it would waste time. Fed. R. Evid. 403.

At oral argument, Mavity's counsel represented that he did not intend to offer all, or even the majority, of the documents into evidence.

Based upon the documents' titles and publication dates, many of the sources listed by Berry appear inadmissible because they are irrelevant or have minimal probative value to the issues in the case.[8]  Despite my initial conclusion about Berry's sources, I will deny MTD's motion to exclude these potential exhibits.  I can not issue an order that would exclude most, if not all, of Berry's exhibits without a better sense of the scope of Berry's potential testimony.  Further, the parties have an upcoming deadline for which they must identify trial exhibits.  At that time, MTD can challenge Berry's exhibits and I will reconsider the issue.  *See Campos v. MTD Prods., Inc.*, No. 2:07-CV-00029, 2009 WL 2252257, at *16–23 (M.D. Tenn. July 24, 2009) (reserving decision on same expert's proposed documents in similar lawn mower case).

IV

For the reasons stated, it is **ORDERED** as follows:

1. Defendant's Motion for Summary Judgment (DE 21) is DENIED;

---

[8] Evidence of similar accidents is generally not admissible in product liability cases for the purpose of proving negligence or causation, although it may be admissible to show actual knowledge by the manufacturer of a defect in its product, provided that it is not unduly prejudicial or distracting to the jury on a collateral matter. *See Blevins v. New Holland N. Am., Inc.*, 128 F. Supp. 2d 952, 960-61 (W.D. Va. 2001).

2. Defendant's Motion in Limine to Exclude Trial Exhibits Produced by Sharon L. Reavis (DE 23) is GRANTED;

3. Defendant's Motion in Limine to Exclude Trial Exhibits Produced by Thomas A. Berry (DE 25) is DENIED; and

4. Plaintiff's Motion in Limine (DE 34) is GRANTED.

ENTER: June 1, 2010

/s/ JAMES P. JONES
Chief United States District Judge